IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| CHAD L. CHANDLER, | ) | CV-11-46-DWM-JCL |
| | ) | |
| Pro Se Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SENTRY SELECT INSURANCE | ) | |
| COMPANY AND JOEL POENDEL, | ) | |
| a claims adjuster for Sentry Ins., Company, | ) | |
| a Wisconsin Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Chad L. Chandler ("Chandler") began working as a service consultant for Scarff Auto Center, Inc. ("Scarff") in 2007. A "pay plan," which was signed by Chandler and his manager, Bill Stokesberry on May 16, 2007, went into effect on June 1, 2007. The pay plan provided that Chandler would receive a base salary of $1,000 per month as well as a monthly commission equal to 2% of "Service Sales"; in June 2008, Chandler's monthly commission increased to 3%.

In November 2008, December 2008 and March 2009, Scarff withheld a portion of Chandler's monthly commission, citing adverse economic conditions.

Over time, Scarff's financial status deteriorated and on October 15, 2009, Scarff informed its employees in writing that their commission checks would no longer be issued; Chandler resigned from his position on October 16, 2009.

Chandler subsequently filed suit against Scarff, asserting a variety of civil claims and seeking damages of $7,923.20 in unpaid wages and $251,232.00 in lost wages and benefits. Scarff was defended under its Commercial Garage Insurance Policy ("Policy") by Defendant Sentry Select Insurance Company ("Sentry"). In May 2010, Chandler and Sentry entered into a settlement agreement that paid Chandler $12,000 in exchange for Chandler releasing his claims against Scarff. Chandler's lawsuit against Scarff was therefore dismissed with prejudice.

Chandler filed this action against Sentry, as well as its claims adjuster Joel Poendel, in December 2010. Chandler asserts claims of deceit, constructive fraud, unjust enrichment, and violations of Montana's Unfair Trade Practices Act. In particular, Chandler alleges that Sentry misrepresented the terms of the Policy during settlement negotiations.

Chandler has moved for partial summary judgment and asked this Court to hold, as a matter of law, that the Policy covered his underlying claims against Scarff, and that Sentry misrepresented pertinent facts and insurance policy provisions in violation of Montana Code Annotated § 33-18-201(1).

United States Magistrate Judge Jeremiah C. Lynch issued Findings and Recommendations in which he determined that Chandler's motion for partial summary judgment should be denied. Chandler filed timely objections regarding that denial; therefore he has preserved his right to a *de novo* review of the record to the portions of the Findings and Recommendations to which Chandler objected.

This Court is mindful of the requirement that "a document filed *pro se* is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, "*pro se* litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). In the summary judgment context, that means that all movants, *pro se* or otherwise, must demonstrate that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While reviewing the record, this Court must draw "all reasonable inferences in favor of the nonmoving party, but [make] no credibility determinations or [weigh] any evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 135 (2000).

The Court stresses that, in determining whether Chandler's claims are covered by the Policy, its analysis is guided by the terms of the Policy and not by the language of the Montana Wrongful Discharge From Employment Act ("the Act"). Even if Chandler had valid wrongful discharge claims against Scarff,

Sentry is only obligated to provide coverage for those claims that fall under the umbrella of the Policy.

In his partial summary judgment motion, Chandler contended that his claim was covered by three separate provisions of the Sentry Policy: 1) his claim for lost wages was covered by the Policy's Garage Operations coverage provision; 2) the Policy's Employment Practices Endorsement provided coverage for his constructive discharge claim; and 3) the Policy's Personal and Advertising Injury Liability Coverage provision covered his "False Light" claim. Chandler also argued that Sentry misrepresented the Policy during their settlement negotiations.

Judge Lynch denied each of Chandler's arguments for partial summary judgment. Chandler only objects to Judge Lynch's findings regarding the Policy's Employment Practices Endorsement and Sentry's alleged misrepresentation of the Policy during settlement negotiations. Dkt # 52 at 2-3. Those objections are addressed in turn and this Court makes its own *de novo* determination.

Judge Lynch determined that the Policy's Employment Practices Endorsement did not provide coverage for Chandler's constructive discharge claim because the Policy specifically disclaimed coverage for claims relating to wages owed under express contracts and, alternatively, because the Policy specifically bars coverage for claims relating to intentional conduct. Chandler

-4-

asserts that he never entered into an express contract with Scarff and that Judge Lynch misinterpreted the Employment Practices Endorsement intentional conduct exclusion as it relates to the Act.

Even assuming that the "pay plan" agreement signed by Chandler and by Scarff manager Bill Stokesberry that specifically stated the compensation Chandler was entitled to receive as an employee at Scarff was *not* an express contract,[1] Chandler's claim is not covered by the Employment Practices Endorsement because that section specifically excludes claims based on intentional conduct. On October 15, 2009, Doug Scarff, President of Scarff, wrote to his employees that until further notice "there will be no commission or bonus checks issued monthly." Dkt # 36-1, at 10. That writing manifested Scarff's unequivocal and deliberate intention to no longer fully compensate its employees and that writing serves as the foundation for Chandler's claim.

Chandler also correctly alleges that the "act" that led to his resignation must have been committed by Scarff, and not one of Scarff's employees. Dkt # 51, at 15. Chandler, however, asserts that the only "act" that led to his resignation was

---

[1] Chandler's reliance on Cromwell to bolster his argument that the "pay plan" was not an express contract is misplaced. The analysis in Cromwell was driven by the unique facts in that case; it does not stand for the proposition that an express employment contract cannot be formed in the absence of a specified term of employment. Cromwell v. Victor Sch. Dist. No. 7, 140 P.3d 487, 490-491 (Mont. 2006).

Scarff employee Bill Stokesberry's refusal to fire him, not Scarff's refusal to pay his monthly commissions.

Chandler's argument is unpersuasive. Chandler has acknowledged that his "constructive discharge claim was brought about by a series of acts." Dkt # 52, at 5. Furthermore, if Doug Scarff had not written the letter informing Chandler that he would no longer be receiving his monthly commission checks, Chandler would have no reason to ask Stokesberry to fire him. Scarff's intentional refusal to pay Chandler's monthly commission checks is the foundation for Chandler's claim. Because it is clear from the record that the acts giving rise to Chandler's constructive discharge claim were intentional, the Policy's Employment Practices Endorsement's intentional act exclusion bars coverage.

Chandler alternatively contends that if the intentional act exclusion bars coverage, the Policy's coverage is illusory because it is "contrary to an express provision of law." That argument presumes that because Sentry's Policy disclaims liability for some, but not all, wrongful termination claims that could arise under the Wrongful Discharge from Employment Act, it is contrary to the Act and therefore unlawful. Dkt # 52, at 20.

Chandler cites to <u>Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc.</u>, 341 Mont. 33 (2008). In that case, an insurance contract failed to

provide notice of a 120-hour provision expressly required by Montana Code Annotated § 33-15-337(2). *Id.* at 46. Conversely, Chandler is unable to cite to a statute or to case law that expressly requires an insurance company to provide coverage for all wrongful termination claims that could conceivably arise under the Act.

Chandler mistakenly believes that the "Conformity with Montana Statutes" provision of the policy requires the Policy to incorporate the Act. Dkt # 52, at 19. However, Chandlers statement of undisputed facts acknowledges that the complete text of that provision states: "The provisions of this policy or coverage part conform to the *minimum requirements* of Montana law." Dkt # 35 at 16 (emphasis added). Chandler points to no "minimum requirement" that requires the Policy to incorporate the Wrongful Discharge from Employment Act. Sentry and Scarff were free to enter into a contract that provided as much or as little wrongful termination coverage as they desired. Scarff did not contract with Sentry for a Policy that covered all wrongful termination claims under the Act, but that fact does not render its coverage illusory. Judge Lynch properly denied Chandler's partial summary judgment motion on this issue.

Chandler's only other argument is that Judge Lynch erroneously determined that Sentry did not misrepresent the liability limits of the Policy to Chandler

-7-

during settlement negotiations. During settlement negotiations, Sentry's claims adjuster Joel Poendel informed Chandler that Chandler's claim had "defense value only." According to Chandler, Poendel repeatedly stated that "the more he spent on defense the less Sentry had to spend on settlement." Dkt # 52, at 24. Chandler argues that, under the Policy, Sentry had a duty to defend Scarff and negotiate with him until the limits of the Policy ($500,000) were exhausted. *Id.*

Chandler's summary judgment argument fails here because he cannot show that "there is no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law." There are two asserted interpretations of Poendel's statement that "the more he spent on defense the less Sentry had to spend on settlement." Chandler's interpretation is advanced above; Sentry's interpretation is that the word "had" merely refers to the amount Sentry was willing to spend to successfully defend the case, and not the ultimate amount Sentry potentially could be required to pay under the Policy. A reasonable juror could adopt either interpretation. Because the Court must draw "all reasonable inferences in favor of the nonmoving party," the Court accepts Sentry's interpretation; Chandler's summary judgment argument therefore fails.

Chandler raised a new objection to Judge Lynch's Findings and Recommendations regarding his "false light" claim when he filed his "Reply to

Objections" on November 1, 2011. Dkt # 55, at 1. Judge Lynch filed his Findings and Recommendations on September 22, 2011. Dkt # 51, at 1. Chandler failed to file this objection within fourteen days as required by 28 U.S.C. § 636(b)(1). My review of Judge Lynch's analysis as to this claim revealed no clear error.

Although I appreciate the difficult work Chad L. Chandler has conducted as a *pro se* litigant, upon *de novo* review I agree with Judge Lynch's Findings and recommendations in full. He correctly determined that Chandler did not meet the applicable burden for any of his summary judgment arguments.

Accordingly, IT IS HEREBY ORDERED that I ADOPT Judge Lynch's Findings and Recommendations (DKT # 51) in full.

IT IS FURTHER ORDERED that Chandler's motion for summary judgment (Dkt # 33) is DENIED.

Dated this 4th day of November, 2011.

_____
Donald W. Molloy, District Judge
United States District Court